2/22/01

THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.

Paper No. 16
AFD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Alpine Computer Systems, Inc.
————

Serial No. 74/619,936
————

Anthony R. Masiello of Gadsby Hannah LLP for Alpine Computer Systems, Inc.

David H. Stine, Trademark Examining Attorney, Law Office 114 (Margaret Le, Managing Attorney).
————

Before Hohein, Chapman and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On January 10, 1995, Alpine Computer Systems, Inc. (applicant) filed an intent-to-use application to register the mark ALPINE NETWORK INSURANCE for services identified as "installation, maintenance and repair services for computer and data transmission systems" in International Class 37.[1]  Applicant subsequently disclaimed the term

---

[1] Serial No. 74/619,936.  On January 4, 1996, applicant's Amendment to Allege Use was approved.

"Network."  The Examining Attorney refused to register the mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), because of Registration No. 2,055,630 for the mark ALPINE for:

> computer keyboard terminals; floppy disk drives; mobile computers; office computers; personal computers; computer programs used to create and develop computer software, and used to support creating and developing micro-computers, recorded on cards, tapes, and disks; modems; computer and facsimile interfaces; and mobile facsimile machines and parts thereof (International Class 9).[2]

After the Examining Attorney made the refusal final, this appeal followed.  Both applicant and the Examining Attorney filed briefs.  An oral hearing was not requested.

After considering the arguments of the applicant and the Examining Attorney, the Examining Attorney's refusal to register applicant's mark because it is likely to cause confusion with registrant's mark is affirmed.

Determining whether there is a likelihood of confusion requires application of the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973).  The du Pont factors discussed in this case include the similarity of the marks, the similarity of the goods and services, the sophistication of the purchasers, and the channels of trade.  Not all of the

---

[2] Registration No. 2,055,630 issued on April 22, 1997.

du Pont factors are applicable in every case. In re Dixie Restaurants, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997).

The first factor we have considered is whether the marks are similar in sound, appearance, meaning or commercial impression. du Pont, 476 F.2d at 1361, 177 USPQ at 567. Applicant seeks to register the typed mark ALPINE NETWORK INSURANCE. The cited registration is for the word ALPINE also in typed form. Applicant has incorporated registrant's entire mark into its mark and simply added the highly suggestive or descriptive words NETWORK INSURANCE. A likelihood of confusion is often found when an applicant incorporates a registrant's entire mark and it becomes the dominant part of the applicant's mark. See, e.g., Dixie Restaurants, 105 F.3d at 1407, 41 USPQ2d at 1533-34 (DELTA, the dominant portion of applicant's THE DELTA CAFE and design mark, held similar in sound, appearance, and meaning to registrant's DELTA mark); In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988) (BIGG'S and design for grocery and general merchandise store services found likely to be confused with BIGGS and different design for furniture); Wella Corp. v. California Concept Corp., 558 F.2d 1019, 1022, 194 USPQ 419, 422 (CCPA 1977)(CALIFORNIA CONCEPT and design held

3

likely to be confused with CONCEPT for hair care products). Here, the term ALPINE is the dominant term.  It appears to be an arbitrary term when applied to computer hardware, software, and services.

Applicant argues that INSURANCE is an unusual and striking feature of its mark.  (Applicant's appeal brief at 2.)  Even it that were true, it does not help in avoiding a likelihood of confusion when the marks ALPINE and ALPINE NETWORK INSURANCE are used on closely related computer products and services.  The addition of the phrase "network insurance," including the admittedly descriptive term "network," to applicant's mark for computer services serves does not eliminate the likelihood of confusion.  The phrase "network insurance" hardly seems as unusual and incongruous as applicant argues.  Applicant's own specimens use the words quite mundanely.  "The **Alpine Network Insurance** line of service products is designed to provide comprehensive **network insurance** and general health and performance coverage, as well as emergency and disaster recovery services."  (Specimens, p. 1; emphasis added).  Applicant's use of the highly suggestive or descriptive words "network insurance" and health industry terminology is hardly incongruous.  In effect, applicant insures that a client's computer network will function smoothly and be serviced

4

quickly.  It is not sufficient to overcome the Examining Attorney's determination that ALPINE is the dominant part of applicant's mark.

Next, applicant argues that its services and registrant's goods would not be viewed as having a common source.  Obviously, applicant's services and registrant's goods are not identical but it is difficult to imagine more closely related goods and services.  Some of registrant's goods include office, personal, and mobile computers and computer programs used to develop computer software, and used to develop microcomputers.  Applicant's services involve installing, maintaining and repairing computer and data transmission systems.

To determine whether the goods and services are related, we must look to the identification of goods and services in the application and registration.  Dixie Restaurants, 41 USPQ2d at 1534; Canadian Imperial Bank of Commerce v. Wells Fargo Bank, 811 F.2d 1490, 1493, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987).  "[I]t is well established that a "relatedness" which speaks to a likelihood of confusion may occur not only where goods are involved but can exist between products on one hand and services dealing with or related to those products on the other hand."  MSI Data Corp. v. Microprocessor Systems, Inc., 220 USPQ 655,

658 (TTAB 1983) (Computer hardware manufacturing services to the order of or specification of others held related to electronic ordering system for gathering and transmitting data comprising a recorder-transmitter and data receiver). Safety-Kleen Corp. v. Dresser Industries, 518 F.2d 1399, 186 USPQ 476 (CCPA 1975) (Maintenance services found related to parts for cleaning units). Relatedness may exist even if the products and services are not competitive "if they could come to the attention of the same types of customers suggesting a common origin." MSI Data, 220 USPQ at 658. Here, confusion would be almost unavoidable when an employee, tasked with obtaining maintenance, repair, or installation services for a business's ALPINE office computers, encounters the mark ALPINE NETWORK INSURANCE for maintaining, repairing, and installing computer systems. Even sophisticated purchasers would likely be confused under these circumstances. Octocom Systems Inc. v. Houston Computer Services, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990).

Applicant cites Reynolds and Reynolds Co. v. I.E. Systems, Inc., 5 USPQ2d 1749 (TTAB 1987), for the unremarkable proposition that there must be "some similarity between the goods and services at issue beyond the mere fact that each involves the use of computers."

Id. at 3. In that case, the very specific and different software of the applicant and the opposer were not so closely related that confusion was likely. In this case, employees responsible for information technology purchases at companies would be expected to purchase applicant's services and registrant's products. In those instances, confusion would be likely if goods and services are provided under the same or substantially similar marks.

While likelihood of confusion is determined on the basis of the goods and services as set forth in the application and registration, applicant argues that its services are marketed to people who are in the process of building computer systems. Registrant's goods, however, include some of the products that would be necessary to develop a computer system such as office computers.

Applicant argues that "[a]n individual consumer who buys a computer does not engage a service provider to install and maintain the computer in his home." Assuming that this unsupported argument is correct, it completely ignores the fact that the cited registration is in no way limited to computer products purchased by individuals for home use. Quite the opposite, office computers are specifically recited as well as computer programs used to develop computer software, and to develop microcomputers.

This is hardly the type of software normally considered designed for home use.  The other goods in the registration, e.g., personal computers, mobile computers, modems, etc., do not support an argument that these goods and applicant's services would not be encountered by the same purchasers.

Decision:  The refusal to register is affirmed.